**FIRST COUNTY NATIONAL BANK AND TRUST COMPANY, OF WOODBURY, NEW JERSEY, Executor under the Will of Clifford H. Shivers, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 212–67.

United States District Court
D. New Jersey.

Oct. 4, 1968.

David E. Crabtree, Woodbury, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., Dist. of New Jersey, Mitchell Rogovin, Asst. Atty. Gen., Donald R. Anderson and James B. McDaniel, Attys., Dept. of Justice, Washington, D. C., for the United States.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

COHEN, District Judge:

Plaintiff, the First County National Bank and Trust Company of Woodbury, New Jersey, as the executor under the will of Clifford H. Shivers, deceased, seeks refund from the United States of America of a $12,949.65 penalty, plus interest, assessed for the delinquent filing of a federal estate gift tax return for the year 1964. The asserted basis for the refund is that the decedent was mentally and physically incapable of timely filing in his lifetime during the due period, which condition constituted reasonable cause for his failure, rather than wilful neglect; and further, that there was reasonable cause, rather than wilful neglect, for the failure of the plaintiff-executor following decedent's death and its qualifying as the decedent's legal representative, to do so. The government's position, in resisting refund, is that the delinquent filing and payment were due to wilful neglect rather than reasonable cause on the part of both the decedent taxpayer in his lifetime and by the plaintiff-executor thereafter, within the meaning of the penalty provision of 26 U.S.C. § 6651.[1]

The matter was tried without a jury. The plaintiff introduced the testimony of the taxpayer's attending physician and of its Vice-President and Trust Officer. After consideration of the testimony, stipulation of facts, exhibits and memoranda submitted by the parties, the Court, pursuant to Rule 52, F.R. Civ.P., makes the following findings and conclusions:

## FINDINGS OF FACT

1. Sometime during the first half of 1964, Clifford H. Shivers made gifts of securities to his two daughters amounting to $296,515.00.

2. In the latter part of July, 1964 Shivers became critically ill. His death occurred on June 21, 1965.

3. No federal gift tax return was filed, nor payment made therefor, during the lifetime of Shivers on the gifts in question. The due date for filing, without incurring penalty, was April 15, 1965. In fact, no return was filed until so done by the plaintiff-executor on March 2, 1966, some eleven months after the commencement of the penalty date.

---

1. 26 U.S.C. § 6651 Failure to file tax return
   (a) Addition to the tax.—In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * *, on the date prescribed therefor (determined with regard to any extension of time for filing), *unless it is shown that such failure is due to reasonable cause and not due to wilful neglect,* there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. (Italics supplied.)

4. The plaintiff-bank qualified as executor of the Shivers estate on July 8, 1965.

5. Upon probate of the will the estate, including a large investment portfolio of securities, was valued in excess of $1,000,000.00 for federal tax purposes.

6. After qualifying as executor, plaintiff compiled an extensive inventory of the estate. About 5 weeks later, August 15, 1965, it ascertained the existence of the 1964 gifts in question. Thereafter, the nature and approximate values of the gift securities were ascertained by telephone calls and correspondence with the donees, one of whom lived in Virginia, the other in Delaware. The exact value of the securities was obtained from the stock broker on November 1, 1965, some two and one half months after it learned of the gifts.

7. On or about March 2, 1966, eleven months after the return was due and some seven months after acquiring knowledge of the gifts, the plaintiff-executor filed the return for the 1964 gifts and paid a tax of $51,798.60 with interest of $2,762.59, or a total of $54,561.19.

8. Pursuant to Section 6651 of the Internal Revenue Code, the District Director assessed a 25% delinquent penalty against the estate in the amount of $12,949.65 which was paid on April 15, 1966.

9. Thereafter, on April 22, 1966, plaintiff filed a claim for refund of the penalty payment. No administrative action was taken and the present suit was instituted more than six months after the claim was filed.

10. In attempting to justify the failure of the decedent to make timely filing of the federal gift tax return during his lifetime, the plaintiff introduced medical testimony of the decedent's attending physician. He testified to a medical history of a heart condition since 1946. However, his entrance as the decedent's physician was not until 1963 when he commenced routine treatment for this condition. He testified further that in July, 1964, Shivers sustained a cerebral vascular attack resulting in his permanent loss of speech and in his inability to communicate other than by means of a note pad and pencil; as time progressed, the decedent's condition regressed; his handwriting failed to the point of illegibility; personality changes developed; a rapid deterioration of his general condition, coupled with the onsent of arteriosclerosis, brought about his death on June 21, 1965.

11. In the opinion of the attending physician, the above physical and mental conditions of the taxpayer were such as to render him unable to manage his ordinary business affairs from the end of 1964 until the date of his death.

12. In direct contrast to the opinion of the attending physician, is the indisputable evidence of the filing on January 22, 1965, of a 1964 federal income tax return legibly signed by the taxpayer. However, the decedent did not accord to the federal gift tax problem, which he created in the first half of 1964, the same degree of ordinary business care and prudence which he extended to his personal income tax return prepared and filed some seven months later in January, 1965.[2] The lapse of time and his ultimate failure to file have not been satisfactorily explained, despite the medical condition of 1965. Consequently, such failure to file a timely return was in fact due to his wilful neglect within the meaning of the delinquent penalty statute. 26 U.S.C. § 6651.

13. In its attempt to justify its belated filing of the return in question, and in support of its demand for a refund of the penalty incurred, the plaintiff offered testimony of its trust officer. He testified that the plaintiff-

---

2. Illness to be a reasonable cause must be such as to render the taxpayer incapable of business activity during the time the return could and should have been filed. Ward v. U. S., 1958–2 U.S. T.C., par. 9922 (E.D.Tenn. April 4, 1958).

bank, as executor, maintained its principal office in Woodbury, New Jersey, with three branch banks located in that general area; its officers consist of a president and three vice-presidents, and that he is one of the vice-presidents and the trust officer in charge of the plaintiff's trust department; and additionally, there is another trust officer, and six clerks with no accounting training or background. He further testified that the trust department administers some 351 trust accounts with a total book value of approximately $13,000,000.00; that each year it prepares between 160 and 180 fiduciary tax returns, entailing tax information letters to all beneficiaries reporting the federal tax treatment of these accounts; that the trust department administers pension and profit sharing plans and furnishes analyses of trust securities; that he is responsible for the acquisition of new trust business which requires him to spend considerable time out of his office; and that the department encountered difficulty in maintaining its work load in 1965 and 1966, even with its officers working overtime. He further testified that the activities in compiling inventory and securities information for tax purposes for the estate in question, particularly in regard to the gifts made by the testator in 1964, consumed a considerable amount of time. He stressed particularly that the plaintiff-bank was busily engaged in August of 1965 in assembling voluminous data for the preparation of an estimate for the New Jersey Transfer Inheritance Tax liability of this estate so that timely filing could be made in order to avoid a 10% per annum interest charge. The trust officer admitted that inasmuch as the penalty period had already commenced on April 15, 1965, intelligent administration of the trust department warranted the postponement of the filing of the federal gift tax return for a few more months.

14. No extension of time was requested for the filing of the return in question; no attempt was made to secure the services of an accountant to assist in the preparation of the various returns required to be filed; and the services of legal counsel were belatedly obtained in regard to this federal tax problem.

15. The plaintiff-executor did not accord to the federal gift tax problem the same degree of ordinary business care and prudence that it extended to the state inheritance tax problem, and the problem of its other trust accounts, and which was required and ought to have been exercised under the circumstances. Consequently, plaintiff's failure to file the return within a reasonable time was not due to reasonable cause but was due in fact to wilful neglect within the meaning of the delinquent penalty statute. 26 U.S.C. § 6651.

16. The Court finds as a matter of fact that the delinquency in filing the federal gift tax return in question was not due to reasonable cause on the part of either the decedent or the plaintiff-executor but was due in fact to wilful neglect on the part of both within the meaning of the delinquent penalty statute. 26 U.S.C. § 6651.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction by virtue of 28 U.S.C. § 1346(a) (1).

2. The burden of proof is upon the taxpayer to show that the failure to file a timely return was due to reasonable cause and not due to wilful neglect. 26 U.S.C. § 6651; Ferrando v. United States, 245 F.2d 582 (9 Cir. 1957); Sanders v. Commissioner of Internal Revenue, 225 F.2d 629 (9 Cir. 1957); Sanders v. Commissioner of Internal Revenue, 225 F.2d 629 (10 Cir. 1955); Hatfried, Inc. v. Commissioner of Internal Revenue, 162 F.2d 628 (3 Cir. 1947).

3. Reasonable cause means the exercise of ordinary business care and prudence. *Sanders*, supra; *Hatfried*, supra.

4. Penalties imposed under the revenue laws were designed to attach to conduct of a taxpayer which is intentional, or knowing, or voluntary

rather than accidental. United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381 (1933); *Hatfried*, supra. A conscious decision to defer the filing of a return, after acquiring knowledge of its delinquency, beyond a reasonable time and without reasonable cause, is wilful neglect.

■ 5. The plaintiff has not carried its required burden of proof in establishing that the failure of the decedent to file his 1964 federal gift tax return during his lifetime within the prescribed period was due to reasonable cause and not to wilful neglect.

■■ 6. The plaintiff has not shown that there was reasonable cause for the failure to file during the entire period of delinquency, April 15, 1965 to March 2, 1966, a period of approximately eleven months. Even assuming that the decedent was too ill, although he *legibly signed* his federal income tax return and made its *timely filing*, nevertheless, no reasonable cause exists for the plaintiff-executor's failure to act more promptly than it did. Ferrando v. United States, supra. As a matter of fact, the lapse of some seven months after the plaintiff had acquired knowledge of the gifts and failed to file a return promptly was not the use of ordinary business care and prudence under these circumstances. The plaintiff-bank professes an expertise in the administration of trust accounts and decedent estates. Its explanation for belated filing was that it was too busy with other work. Yet it had never sought an extension of time for filing, nor additional accounting assistance, nor legal services. In fact, it took a calculated risk in not filing until some seven months after it qualified as executor and undertook management of this estate. Under the circumstances, prudence dictated dispatch in the filing of a return. A plea of "too busy" is insufficient to relieve the taxpayer or his legal representative of the obligation imposed by statute to make timely filing. Van Schaick v. Commissioner, 32 B.T.A. 736; Pioneer Automobile Service Co. v. Commissioner, 36 B.T.A. 213; Cowden

v. Commissioner, Int'l.Rev. October 21, 1965 (P-H Memo T.C., par. 65, 278); and see Logan Lumber Co. v. Commissioner of Internal Revenue, 365 F.2d 846 (5 Cir. 1966), wherein it is aptly stated at page 854:

"If every taxpayer who forgot to file a return or was too busy to file a return escaped the penalty for failure to file, our tax system would soon collapse."

7. Within the meaning of the *Act*, the plaintiff has not proved that failure to promptly file the delinquent return was due to reasonable cause and not due to wilful neglect. 26 U.S.C. § 6651.

8. The plaintiff's complaint shall be dismissed and judgment shall be entered in favor of the defendant.

Counsel for the defendant shall submit an appropriate order for judgment in accordance herewith.